MICHAEL MCCARTHY (SBN 89588)
mmccarthy@nemecek-cole.com
VIKRAM SOHAL (SBN 240251)
vsohal@nemecek-cole.com
**NEMECEK & COLE**
A Professional Corporation
16255 Ventura Boulevard, Suite 300
Encino, California 91436-2300
Tel: (818) 788-9500 / Fax: (818) 501-0328

Attorneys for Defendant
HAMILTON INSURANCE DAC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STERLING PARK LLC | Case No. 3:21-cv-01347-W-BLM |
| Plaintiff, | Honorable Thomas J. Whelan<br>Courtroom 3C (3rd Floor) |
| vs. | **DEFENDANT HAMILTON** |
| AXOS FINANCIAL, INC., a corporation, HAMILTON INSURANCE DAC, a corporation, and Does 1 through 10 | **INSURANCE DAC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE VERIFIED FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)** |
| Defendants. | NO ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)(1) |
| | Date:          November 8, 2021<br>Ctrm.:         3C |
| | Complaint Filed: July 27, 2021<br>Trial Date: Not Set |

1

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................. 3

II.   SUMMARY OF THE FAC ............................................................. 3

    A.    The Parties ............................................................................. 3

    B.    The Mortgage Agreement Between Plaintiff And Axos Bank ............. 4

    C.    Axos Bank Obtaining Lender-Placed Insurance For The Property
        Due To Several Issues And Discrepancies With Plaintiff's Proof
        Of Insurance Required Under The Mortgage Agreement .................... 5

    D.    The Alleged 750% Increase In Plaintiff's Mortgage Bill.................... 7

III.  ARGUMENT ................................................................................. 8

    A.    The FAC Should Be Dismissed Under FRCP 12(b)(1) Because
        Plaintiff Lacks Standing To Sue Hamilton ........................................ 8

    B.    Even If There Was Standing To Sue, The FAC Fails To State
        Any Claims Against Hamilton Upon Which Relief May Be
        Granted ........................................................................................ 10

        1.    The FAC Against Hamilton Fails As A Matter Of Law
            Because It Is Devoid Of Any Facts Sufficient To Draw A
            Plausible Connection Between The Alleged Harm And
            The Lender-Placed Insurance Policies ..................................... 11

        2.    The Second Cause Of Action For Unjust Enrichment Fails
            Because It Is Not A Recognized Cause Of Action In
            California................................................................................ 13

        3.    The FAC Fails To Plead "Fraud" Against Hamilton With
            Any Specificity Whatsoever ..................................................... 13

        4.    The Fourth Cause Of Action For Alleged RICO Violations
            Fails As A Matter of Law ....................................................... 14

        5.    Plaintiff's Bus. & Prof. Code § 17200 Claim Against
            Hamilton Also Fails As A Matter Of Law............................... 16

I.    CONCLUSION ........................................................................... 17

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

# I.    **INTRODUCTION**

Defendant Hamilton Insurance DAC ("Hamilton") moves to dismiss the claims asserted against it in the Verified First Amended Complaint ("FAC") of Plaintiff Sterling Park LLC ("Plaintiff").

This action is, at bottom, a dispute over a commercial mortgage contract between Plaintiff (the mortgagor) and Axos Bank (the mortgagee). The mortgage contract required Plaintiff to maintain sufficient insurance on the property to protect the interests of Axos Bank. The contract also permitted Axos Bank to obtain lender-placed insurance in the event Plaintiff failed to provide proof of sufficient insurance. Hamilton was not a party to that contract. The entirety of Plaintiff's claims against Hamilton are based on the lender-placed insurance policies that Axos Bank obtained from Hamilton after Plaintiff failed to provide proof of sufficient insurance coverage to Axos. It was Axos Bank, not Plaintiff, who was listed as the insured under those policies. Moreover, those policies were for the benefit of Axos, not Plaintiff.

Thus, as further explained herein, Plaintiff lacks standing to bring any claims against Hamilton. Even if there was standing, the FAC fails to plead any viable claims against Hamilton upon which relief can be granted.

# II.    **SUMMARY OF THE FAC[1]**

## A.    **The Parties**

Plaintiff alleges that it is a California limited liability company and the owner of an investment property it refers to as the Sterling Avenue Property (the "Property").

---

[1] This summary is based on the allegations in the FAC and the matters set forth in the exhibits thereto. Under FRCP 10(c), an exhibit attached to the complaint "is part of the pleading for all purposes" and may be considered on a motion to dismiss. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Indeed, "[w]hen an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings." *Van Hook v. Curry*, 2009 WL 773361, at *3 (N.D. Cal. March 23, 2009); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

(Dkt. No. 10 – FAC, ¶¶ 1, 9.)  The Property is a "mobile home park containing a small two bedroom one-bath home on one side of the [P]roperty, a small one-bedroom one bath structure on the other side of the [P]roperty and thirty-eight pads for mobile homes spread across a multi-acre lot."  (FAC at pgs. 2:23-3:1.)

The FAC names Axos Financial, Inc. as a defendant and claims that it is the same entity as Axos Bank.  Plaintiff contends that Axos Financial was "formerly named Bank of the Internet" and is "commonly known as Axos Bank."  (FAC, ¶ 2.)

Hamilton is the second defendant named in the FAC.  Plaintiff alleges that Hamilton is an Ireland-based corporation that is "in the insurance business and is the insurer for Defendant AXOS force-placed insurance." (FAC, ¶ 3.)  The FAC asserts that, according to its 2020 year-end report, Hamilton "held 92% of its assets in U.S. dollars and the U.S. Stock Market was the main driver of investment returns.[2]

### B.    The Mortgage Agreement Between Plaintiff And Axos Bank

Plaintiff acquired the Property in 2006 as an investment for $1,300,000.00. (FAC, ¶ 9.)   At the time of that acquisition, Plaintiff obtained a mortgage for $910,000.00 from Union Bank of California.  (FAC, ¶ 10.)

In 2014, Plaintiff refinanced the mortgage on the Property with the Bank of the Internet for $790,000.00.  (FAC, ¶ 10.)  In 2016, Plaintiff received a notice that "Bank of the Internet would now be Defendant AXOS."  (FAC, ¶ 13.)

In or about March 2020, after its fixed interest rate under the prior mortgage had expired, Plaintiff again refinanced the Property with a $709,000.00 loan from Axos Bank.   (FAC, ¶¶ 14-15.)  Plaintiff entered into a deed of trust with Axos Bank (hereinafter, the "Mortgage Agreement"), a copy of which is attached as Exhibit D to

---

[2] Hamilton's Solvency & Financial Condition Report is attached as Exhibit Q to the FAC.  (*See* Dkt. No. 10-7.)   As explained therein, the report was prepared in accordance with the requirements of the Solvency II regime – "a harmonized EU-wide regulatory framework for Insurance Companies . . . [which] requires reporting and public disclosure . . . [to] stakeholders with an insight into the Company's overall financial condition."  (Exhibit Q at pg. 3.)

**4**

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

the FAC.  (*See* Dkt. No. 10-4.)

The Mortgage Agreement requires Plaintiff to "insure the Property against loss or damage by fire and such other hazards as Lender shall from time to time require[.]" (Dkt. No. 10-4 – Mortgage Agreement at § 6.10.)  The Mortgage Agreement further provides that if Plaintiff "fails to maintain and deliver to Lender the original policies or certificates of insurance required by this [Mortgage Agreement], **upon ten (10) days' prior notice to [Plaintiff]**, Lender may procure such insurance at [Plaintiff's] sole cost and expense."  (*Id*., emphasis added.)

The FAC alleges that Plaintiff maintained its own flood insurance and property insurance for the Property between April and December 2020.  (FAC, ¶ 16.)  During this period, Plaintiff claims that it received mortgage bills from Axos Bank for $3,915.12 which included principal of approximately $834.83 and interest of approximately $3,080.29.  (FAC, ¶ 15.)

### C. Axos Bank Obtaining Lender-Placed Insurance For The Property Due To Several Issues And Discrepancies With Plaintiff's Proof Of Insurance Required Under The Mortgage Agreement

In late December 2020, Plaintiff contends that it received a letter from Axos "requesting proof of flood insurance."  (FAC, ¶ 17.)  After receiving that letter, Plaintiff alleges that it had several conversations with "Defendant's representative including Katherine Hudoc (Hudoc) of Provident Financial Insurance Company (PFIC)," and discovered that the "real issue was *insufficient* flood insurance."  (FAC, ¶ 17, emphasis in original.)

Plaintiff alleges that, while § 6.10 of the Mortgage Agreement required it to insure the Proeprty against loss or damage not to exceed full replacement cost, "Defendants' agent told Plaintiff verbally that the amount of each of the separate flood insurances for the small house and small apartment had to ach be equal to the mortgage on the property which was $709,000.00 for a total flood nsurance coverable of $1,418,000.00."  (FAC, ¶ 18.)  Plaintiff alleges that Axos Bank "increased the Flood Insurance Premium to $10,438.56 per year," which increased Plaintiff's

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

1    mortgage payment from $3,915.12 to $4,785.00." (*Id.*)

2         Importantly, Plaintiff contends that while it found the foregoing increase in

3    mortgage payments "excessive," Plaintiff did not consider it "worth the continued

4    argument." (FAC, ¶ 18.) "Plaintiff agreed to the additional $869.88 per month added

5    to his [*sic*] mortgage and considered the matter settled." (*Id.*)

6         In or about March 2021, "after receiving Plaintiff's proof of hazard insurance,"

7    Axos Bank discovered that the proof of insurance that Plaintiff had furnished to it had

8    incorrectly identified the Property as being located in San Bernardino rather than in

9    Highland California.[3] (FAC, ¶ 19.)

10        On or about March 3, 2021, Axos Bank sent two letters to Plaintiff stating that

11   it had obtained lender-placed insurance policies for the two buildings located on the

12   Property. (FAC, ¶ 21 and Dkt. No. 10-10 – Exhibit J to the FAC.) In the first letter,

13   Axos Bank explained the following to Plaintiff:

14       Because we did not have evidence that you had hazard insurance on the
         property listed above, we bought insurance on your property and added
15       the cost to your mortgage loan account . . . **Because hazard insurance
         is required on your property, we intend to maintain insurance on
16       your property by renewing or replacing the insurance we bought**.

17       The insurance we buy

18       • **Costs an estimated $568.69 annually, which may be
19         significantly more expensive than insurance you can buy
           yourself.**
20
21       • **May not provide as much coverage as an insurance you buy
           yourself.**
22

23   (Dkt. No. 10-10 – Exhibit J at pg. 1, emphasis in original.) The second letter made

24   the same explanation to Plaintiff, with the only difference being that it disclosed the

25   _____

26   [3] While the FAC attempts to suggest some wrongdoing on the part of Axos Bank and
     initially claims that the San Bernardino city designation was accurate, Plaintiff ends
27   up admitting that the city designation in its proof of insurance was inaccurate. (*See,
     e.g.,* FAC, ¶ 19; *see also* Dkt. No. 10-1 – the Grant Deed for the Property identifying
28   it as being located "in the City of Highland.")

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**6**

annual cost of the second lender-placed insurance as **$1,065.40**.  (Dkt. No. 10-10 – Exhibit J at pg. 3.)

Both letters enclosed a one-page document summarizing the lender-placed insurance policies for the two buildings on the Property that were effective from March 3, 2021 to March 3, 2022, "OR UNTIL CANCELLED."  (Dkt. No. 10-10 – Exhibit J at pgs. 2 and 4.)  Those enclosed documents also disclosed that, "[t]he insurance coverage procured through the master policy(ies) referenced above has been requested by the Name Insured.  The master policy(ies) referenced above has been issued by Hamilton Insurance DAC in respect of coverage and limits ordered by the Named Insured," which the documents identified as Axos Bank.  (Dkt. No. 10-10 – Exhibit J at pgs. 2 and 4.)

On or about March 29, 2021, Plaintiff alleges that it provided a proof of insurance with the address correction and "receiving confirmation that it was received from Hudoc at PFIC who assured Plaintiff that the corrected proof of insurance was received and that it was sufficient amount as previously requested."  (FAC, ¶ 22.)

### D.   The Alleged 750% Increase In Plaintiff's Mortgage Bill

The FAC alleges that, on May 1, 2021, "Plaintiff was shocked to receive a mortgage bill for $10,626.69."  (FAC, ¶ 23.)  Without any explanation whatsoever, the FAC jumps to the conclusion that the increase was due to the lender-placed insurance.  (*Id.*)  Plaintiff alleges that "Defendant AXOS had increased the cost of Plaintiff's force-placed insurance from $869.88 per month to $6,711.57 per month, for a total annual insurance cost of $80,538.84 . . . This was an increase of over $750%!"  (*Id.*)

However, the actual loan statement for May 2021 which is attached as Exhibit M to the FAC does not support Plaintiff's broad-leap conclusion that the increase was caused by the lender-placed insurance.  (*See* Dkt. No. 10-13.)  That statement contains a charge for $869.88 for "Escrow No. 1 Balance Increase," which Plaintiff agrees was the monthly cost of the force-placed insurance.  (FAC, ¶ 23 and Dkt. No. 10-13.)

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**7**

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

However, neither the statement nor the FAC provides any explanation regarding the $6,711.5 Escrow amount listed therein.  It could very well be charges completely unrelated to lender-placed insurance policies provided by Hamilton.  The FAC markedly does not provide any explanation whatsoever to support Plaintiff's conclusion that the amount constituted the monthly costs for the lender-placed insurance.

Finally, Plaintiff alleges that "Defendant have continued to charge Plaintiff this increased amount ($6,711.57 per month for force-placed insurance) for the months of June, July, August and September 2021 and this is an ongoing issue where Defendants are still charging Plaintiff that amount at the time of this first amended complaint." (FAC, ¶ 24.)

Based on the foregoing, the FAC asserts five causes of action – namely, a claim for breach of contract against Axos and causes of action for unjust enrichment, civil fraud, violation of the Racketeer Influenced and Corrupt Organization Act (RICO), and violation of California's Unfair Competition Law (UCL).

## III.   ARGUMENT

### A.   The FAC Should Be Dismissed Under FRCP 12(b)(1) Because Plaintiff Lacks Standing To Sue Hamilton

FRCP 12(b)(1) permits federal courts to dismiss complaints for lack of subject matter jurisdiction.  "Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1)."  *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1020 (S.D. Cal. 2013).

To establish Article III standing, a plaintiff must allege an injury-in-fact, causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The plaintiff bears the burden of establishing standing as to each defendant. *Simpson v. California Pizza Kitchen*, 989 F. Supp. 2d at 1020; *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 769 n.6 (1st

Cir. 2011).

Plaintiff's claims against Hamilton arise entirely out of the alleged force-placed or lender-placed insurance policies.  As the court explained in *Stevens v. Union Planters Corp.*, 2000 WL 33128256 (E.D. Pa. 2000):

> Forced placed insurance is hazard insurance purchased by a mortgagee or servicer of a mortgage to protect the mortgagee's interest in the premises which are the subject of the mortgage.  Standard mortgage instruments provide that a mortgagee can do that which is reasonable and/or necessary to maintain appropriate hazard insurance on the mortgagor's real property sufficient to protect the mortagee's interest.  Therefore, if mortgagors do not purchase hazard insurance, mortgagees are permitted to purchase the insurance and apply the premiums to the monthly mortgage payment in order to protect their property interest.

*Id*. at *1.

Here, the alleged lender-placer insurance policies were obtained by Axos Bank and for the protection and benefit of Axos Bank.  The policies identified the insured as Axos Bank – *not* Plaintiff.  (Dkt. No. 10-10 at pgs. 2, 4.)    These policies were obtained by Axos Bank pursuant to § 6.10 of its Mortgage Agreement with Plaintiff, the specific terms of which were designed for the benefit and protection of Axos Bank and not Plaintiff.  (*See* Dkt. No. 10-4 at § 6.10.)  Indeed, in that same agreement, Plaintiff assigned all of its rights to insurance claims and proceeds to Axos Bank:

> Trustor absolutely and irrevocably assigns to Lender all of the following rights, claims and amounts (collectively, the "Claims"), all of which shall be paid to Lender: (i) all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interst in, the Property; (ii) all other claims and awards for damages to or decrease in value of all or any part of, or any interst in, the Property; (iii) **all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Property**; and (iv) all interest which may accrue on any of the foregong . . . All awards, proceeds, and other sums described herein shall be payable to Lender.

(Dkt. No. 10-4 at § 6.11(a), emphasis added.)

**9**

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

1
2
3
4

5
6
7
8
9

10
11
12
13
14
15
16
17
18
19

20
21

22
23

24
25
26
27
28

Thus, Hamilton did not owe any duty whatsoever to Plaintiff as Plaitniff was neither a named insured, additional insured or an intended beneficaries of the lender-placed insurance policies alleged in the FAC.  Plaintiff, threfore, does not have standing to assert claims against Hamilton pertaining to those policies.

In *Carrier v. Balboa Ins. Co.*, 2009 WL 666962 (W.D. La. 2009), the court held that "because the plaintiffs are neither named insureds nor third party beneficiaires pursuant to the policy, this court concludes that there is no legal relationshp between the plaintiffs and [the insurer], and that the plaintiffs have no standing to bring their claims." *Id*. at *3.

Similarly, in *Caplen v. Security Nat'l Servicing Group*, 514 F. Supp. 2d 746 (E.D. Pa. 2007), the court granted summary judgment to an insurer that issed a force-placed policy covering premises that were destroyed by fire.  The plaintiff homeowner had asserted calims against the insurer for breach of contract, bad faith, breach of fiduciarfy duty and fraud.  In dismissing the claims against the insurer, the court wrote that "the plaintiff is not a named insured in the [force-placed] policy, and [the insurer] has no duty, contractual or fiducairy, towards the plaintiff."  *Id*. at 750; *see also Simpson v. Balboa Ins. Co.*, 2009 WL 1291275 (S.D. Miss. 2009) (holding that plaintiff property owner lacked standing to sue the insurer for the lender-placed policy becaue plaintiff was not the named insured in the policy).

Based on the foregoing, Hamilton submits that Plaintiffs' claims against it must be dismissed pursuant to FRCP 12(b)(1).

**B.    Even If There Was Standing To Sue, The FAC Fails To State Any Claims Against Hamilton Upon Which Relief May Be Granted**

"A district court's dismissal for failure to state a claim under [FRCP] 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2001) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

**10**

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

On a FRCP 12(b)(6) motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), emphasis added. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A court considering a motion to dismiss need not accept a plaintiff's legal conclusions as true, *id.*, nor must a court presume the accuracy of legal conclusions that are couched as factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 1. The FAC Against Hamilton Fails As A Matter Of Law Because It Is Devoid Of Any Facts Sufficient To Draw A Plausible Connection Between The Alleged Harm And The Lender-Placed Insurance Policies

Rule 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). TO meet this requirement, the Supreme Court has held that an "entitlement to relief" requires "more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable," *id.* at 556, plaintiffs must include sufficient "factual enhancement to cross "the line between possibility and plausibility." *Id.* at 557.

In *Starr v. Baca*, 652 F.3d 1202, the court applied the pleading principles to hold: "If there are two alternative explanations, on advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**11**

when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id*. at 1216.

In *In re Century Aluminum Co. Secs. Litig*., 729 F.3d 1104 (9th Cir. 2013), the court of appeals affirmed the dismissal of the complaint because, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is ture, in order to render plaintiffs' allegations plausible." *Id*. at 1108.  Unlike *Starr*, where the plaintiff's plausible complaint survived a motion to dismiss by offering facts that tendered to exclude the defendant's innocuous alternative explanation, the court held that the complaint in Century established only a "possible" entitlement to relief, and thus could not support further proceedings. *Id*. at 1108.

As detailed under Section II, *supra*, the FAC specifically alleges that Axos Bank sent letters to Plaintiff informing it of the lender-placed insurance policies that it had obtained for the Property with annual costs of $568.69 and $1,065.40.  (FAC, ¶ 21 and Dkt. No. 10-10 – Exhibit J to the FAC.)  However, the FAC then goes not to allege that, on May 1, 2021, "Plaintiff was shocked to receive a mortgage bill for $10,626.69."  (FAC, ¶ 23.)  Without any explanation whatsoever, the FAC jumps to conclusion that the increase was due to the lender-placed insurance.  (*Id*.)  Plaintiff alleges that "Defendant AXOS had increased the cost of Plaintiff's force-placed insurance from $869.88 per month to $6,711.57 per month, for a total annual insurance cost of $80,538.84 . . . This was an increase of over $750%!"  (*Id*.)

However, the actual loan statement for May 2021 which is attached as Exhibit M to the FAC does not support Plaintiff's broad-leap conclusion that the increase was caused by the lender-placed insurance.  (*See* Dkt. No. 10-13.)  That statement contains a charge for $869.88 for "Escrow No. 1 Balance Increa," which Plaintiff agrees was

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

the monthly cost of the force-placed insurance.  (FAC, ¶ 23 and Dkt. No. 10-13.) Neither the statement nor the FAC provide any explanation regarding the $6,711.5 Escrow amount listed therein. **It could very well be charges completely unrelated to lender-placed insurance policies provided by Hamilton**.  The FAC markedly does not provide any explanation whatsoever to support Plaintiff's conclusion that the amount constituted the monthly costs for the lender-placed insurance.

Thus, under the case law discussed *supra*, the FAC fails to make any plausible connection between the alleged harm and the lender-placed insurance policies. Without that connection, all of Plaintiffs' claims against Hamilton fail as a matter of law.

### 2.   The Second Cause Of Action For Unjust Enrichment Fails Because It Is Not A Recognized Cause Of Action In California

"[T]here is no cause of action in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). In *Melchior*, the court explained that unjust enrichment is a general principle rather than a remedy in its own right. *Id*. at 794.  Instead, the avenue for preventing unjust enrichment is by pleading a quasi-contract theory. *Id*.; *see also Maglica v. Maglica,* 66 Cal. App. 4th 442, 449 (1998) ("The underlying idea behind quantum meruit is the law's distaste for unjust enrichment").)

Accordingly, this Court should dismiss Plaintiff's purported second cause of action for unjust enrichment.

### 3.   The FAC Fails To Plead "Fraud" Against Hamilton With Any Specificity Whatsoever

The third cause of action asserts "Civil Fraud" against Axos and Hamilton.

To state a claim for fraudulent representation, a party must allege the following: (1) a false representation; (2) knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

Further, if a claim sounds in fraud, it must comply with the heightened pleading requirements of FRCP 9(b).  *See UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015).  Rule 9's heightened pleading requirement serves several key purposes, including: (1) providing defendants with adequate notice so they are able to defend the charge and deter plaintiffs from filing complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

Here, the FAC does not allege any communications whatsoever between Plaintiff and Hamilton, let alone communications that could be considered "misrepresentations" to support a fraud claim.  (*See* FAC, ¶¶ 34-38.)  In fact, Hamilton's name is not even mentioned under the fraud cause of action.  (*See id.*)  The only communications alleged in the FAC are between the agents of Plaintiff and Katherine Hudoc.  However, the FAC specifically alleges Hudoc to be an employee of "Provident Financial Insurance Company (PFIC)" and not Hamilton.  (FAC ¶ 17.)

Thus, Plaintiff's fraud cause of action against Hamilton does not come even close to meeting the mandatory heightened standard for pleading fraud.

### 4. The Fourth Cause Of Action For Alleged RICO Violations Fails As A Matter of Law

Plaintiff's claims for relief under RICO is subject to Rule 9(b) pleading requirements and the FAC fails to support a plausible inference that Hamilton's alleged conduct violated the statute.  The RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  To state a civil RICO claim,

NEMECEK & COLE

A PROFESSIONAL CORPORATION

16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300

TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

plaintiff must allege facts showing: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks and citation omitted). Plaintiff's allegations fall far short of the particularity requirements of Rule 9(b), which apply because Plaintiff alleges fraud as the predicate for her RICO claim. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988).

(a)       The FAC Fails To Allege An "Enterprise"

Plaintiff fails to adequately describe an enterprise in its FAC which is required to plead a claim under RICO.

The RICO statute applies to "a group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). Such an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* There are three essential features of an enterprise: (1) purpose; (2) relationships among those associated with the enterprise; and (3) longevity to pursue the enterprise's purpose. *Id.*; *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

Here, the FAC does not contain any allegations whatsoever sufficient to plead an "enterprise."  It does not adequately identify the "enterprise," the relationships among those associated with the enterprise, the purpose of the enterprise, and the longevity to pursue the enterprise's purpose. *See, e.g., Shaw v. Nissan North America, Inc.*, 220 F. Supp. 3d 1046, 1057-58 (C.D. Cal. 2016) (RICO claim dismissed for failure to plausibly allege existence of enterprise); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *8-9 (C.D. Cal. July 13, 2015) ("Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises.").

//

15

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

N EMECEK & C OLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

(b)    **The FAC Does Not Allege Any Predicate Acts**

Plaintiff must plead conduct that would constitute mail or wire fraud, or another offense specified in 18 U.S.C. § 1961(1). While Plaintiff claims alleged violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), it fails to allege facts that support a plausible inference that Hamilton's conduct violates these statutes; instead, Plaintiff merely quotes the statutes. To allege mail fraud under 18 U.S.C. § 1341 as a predicate act for a RICO claim, Plaintiff must show a scheme to defraud and a mailing for the purpose of executing the scheme. *Bender v. Southland Corp*., 749 F.2d 1205, 1215-16 (6th Cir. 1984). Similarly, wire fraud under 18 U.S.C. § 1343 requires the use of interstate wire communication facilities in carrying out a scheme to defraud.

In the FAC, Plaintiff imagines a "scheme," without providing any allegations indicating Defendants' intent or motivation in carrying it out.  (FAC, ¶¶ 33-34.)  The alleged "scheme" comes not even close to pleading the type of predicate acts that can support a RICO claim.  *See Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 541 (9th Cir. 1989) (noting that a RICO claim is subject to Rule 9(b) requirements); *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 317-18 (9th Cir. 1990) (RICO claim dismissed for failure to allege predicate acts).

The Court should dismiss Plaintiff's fourth claim for relief with prejudice.

### 5.    <u>Plaintiff's Bus. & Prof. Code § 17200 Claim Against Hamilton Also Fails As A Matter Of Law</u>

California Business & Professions Code section 17200 prohibits "any unlawful, unfair, or fraudulent" business practices.  "Section 17200 provides for three distinct types of unfair competition; prohibiting business practices that are 'unfair,' 'unlawful,' or 'fraudulent.' "  *Chavez v. CITImortgages, Inc*., 2012 WL 12895843, at *3 (C.D. Cal. Dec. 19, 2012).

Plaintiff's section 17200 claim against Hamilton is premised on alleged unjust enrichment, fraud, and RICO violations.  (FAC, ¶¶ 48.)  However, as discussed above,

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

Plaintiff cannot assert any of the foregoing claims against Hamilton.  Thus, Plaintiff's section 17200 claim against Hamilton also fails as a matter of law. *See Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. 2016) ("[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims.") (citation omitted).

I.     **CONCLUSION**

Based on the foregoing, it is respectfully requested that the Court dismiss the FAC against Hamilton with prejudice.


DATED:  September 29, 2021                        NEMECEK & COLE

                                                  By:  /s/Vikram Sohal
                                                       VIKRAM SOHAL, ESQ.
                                                       Attorneys for Defendant, HAMILTON
                                                       INSURANCE DAC

MEMORANDUM IN SUPPORT OF HAMILTON'S MOTION TO DISMISS

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 Ventura Boulevard, Suite 300, Encino, California 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328