**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STERLING PARK, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>AXOS FINANCIAL, INC., et al.,<br><br>                              Defendants. | Case No.:  21-CV-01347 W (BLM)<br><br>**ORDER GRANTING (1) REQUEST FOR JUDICIAL NOTICE [DOC. 12-1]; (2) AXOS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND [DOC. 12]; AND (3) HAMILTON'S MOTION TO DISMISS WITH LEAVE TO AMEND [DOC. 13]** |

   Pending before the Court are motions to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b) filed by Defendants Axos Financial Inc. ("Axos Financial") and Hamilton Insurance DAC ("Hamilton").  Along with the motion, Defendant Axos Financial has also filed a request for judicial notice.  Plaintiff Sterling Park, LLC ("Sterling") opposes.

   The Court decides the matters on the papers submitted and without oral argument.  Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS** the request for judicial notice [Doc. 12-1], **GRANTS** Axos Financial's motion to dismiss [Docs. 12]

1

**WITHOUT LEAVE TO AMEND**, and **GRANTS** Hamilton's motion to dismiss [Doc. 13] **WITH LEAVE TO AMEND**.

I. BACKGROUND

On March 3, 2020, Plaintiff Sterling Park, LLC refinanced an investment property located in Highland, California (the "Property") with Bank of the Internet.[1] (*First Amended Compl.* ("FAC") [Doc. 10] ¶ 10.) The refinance was for $790,000. (*Id.* ¶ 10.) Following the refinance, issues arose between Sterling and the lender regarding the Property's insurance coverage.

As of January 26, 2015, Sterling alleges it had 2 insurance policies for liability and hazard, including flood. (*FAC* ¶ 11, citing Ex. B [Doc. 10-2] and Ex. C [Doc. 10-3].[2]) On that date, "pursuant to the mortgage agreement, Bank of the Internet demanded to escrow [Sterling's] flood insurance so that [Sterling] paid the escrow amount and Bank of the Internet paid the insurance company...." (*Id.* ¶ 12, citing Ex. F [Doc. 10-16].[3]) The following year, Sterling alleges it received notice that "Bank of the Internet would now be Defendant AXOS." (*Id.* ¶ 13.)

In January 2021, Sterling learned that Axos Financial required more flood insurance coverage. (*FAC* ¶ 17.) Axos Financial's agent told Sterling the amount of flood insurance for a small house and small apartment on the property had to "each be equal to the mortgage on the property which was $709,000.00 for a total flood insurance coverage of $1,418,000.00." (*Id.* ¶ 18.) Sterling contends that although paragraph 6.10

---

[1] The FAC alleges Defendant Axos Financial, Inc. was formerly Bank of the Internet and is now commonly known as Axos Bank. (*Id.* ¶ 2.)

[2] Contrary to this allegation, Exhibit C to the FAC indicates there was "no" coverage for "flood." (*FAC*, Ex. C at p. 1.)

[3] The allegation is not supported by Exhibit F because the exhibit involves coverage for the policy period 10/24/20 to 10/24/21.. (*FAC*, Ex. P at p. 1.)

of the contract only required Sterling to "insure the Property against loss or damage 'not to exceed full replacement cost,'" which was $132,800 not $1,418,000, Axos Financial increased the flood insurance premium to $10,438.56 per year. (*Id.* ¶ 18, citing Ex. M [Doc. 10-13].) This increased Sterling's mortgage payment by $869.88 per month (i.e., the increased escrow payment) to $4,785.00. (*Id.*)

On March 3, 2021, Axos Financial sent a letter disputing the city designation on the proof of property insurance and insisted Sterling needed to contact the insurance company to change it to Highland instead of San Bernardino. (*FAC* ¶ 19.) The same day, Axos Financial sent another letter informing Sterling, "[b]ecause we did not have evidence that you had hazard insurance on the property listed above, we bought insurance on your property and added the cost to your mortgage loan account." (*Id.* ¶ 21.)

On March 29, 2021, Sterling contends it provided "proof of insurance with the address correction" and received confirmation from Axos Financial's agent that it was received and that the "corrected proof of insurance was … a sufficient amount as previously requested." (*FAC* ¶ 22, citing Ex. L.[4])

On May 1, 2021, Sterling "was shocked to receive a mortgage bill for $10,626.69." (*FAC* ¶ 23, citing Ex. M.) Sterling alleges the bill reflected an increase by Axos Financial for the cost of Sterling's force-placed insurance "from $869.88 per month to $6,711.57 per month, for a total annual insurance cost of $80,538.84. This was for [flood] and hazard insurance for which [Sterling] had paid $8,833 for the full year." (*Id.* ¶ 23.) This represented an increase of $5,841.69 per month (over 750%) for the force-placed insurance. (*Id.*, citing Ex. M.) Sterling appears to allege the force-place insurance policy was with Defendant Hamilton Insurance, DAC. (*See id.* ¶ 3.) Axos Financial continued charging Sterling the increased amount through September 2021. (*Id.* ¶ 24.)

---

[4] In the attached Exhibit L, Axos Financial's alleged agent states: "Hi, [¶] Received your email and will get this updated to the account." There is no statement regarding the sufficiency of the coverage.

On July 27, 2021, Sterling filed this lawsuit. The original Complaint alleged four state-based claims, and one federal claim for violation of the Real Estate Settlement and Procedures Act (RESPA). (*Compl.* [Doc. 1].) Defendants moved to dismiss the Complaint on the basis that subject-matter jurisdiction was lacking because the sole federal claim was insufficiently pled.

On September 15, 2021, Sterling filed the FAC, which dropped the RESPA claim and added a RICO claim under 18 U.S.C. §1962(c). (*See FAC*.) Defendants again argue, among other things, that subject-matter jurisdiction is lacking because Sterling cannot state a RICO violation. (*See Axos P&A* [Doc. 12]; *Hamilton P&A* [Doc. 13].)

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See N. Star Int'l v. Ariz. Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. Additionally, all factual allegations must be construed "in light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996). However, court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964-65. A complaint may be

dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider material properly subject to judicial notice without converting the motion into one for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

### III. REQUEST FOR JUDICIAL NOTICE

Federal Rule of Civil Procedure 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Id. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Axos Financial requests judicial notice of two documents: (1) a printout from the Federal Deposit Insurance Corporation (FDIC) website for AXOS Bank detailing the Bank Holding Company Ownership and Affiliates and (2) a printout from the California Secretary of State website for AXOS Financial, Inc., detailing the business entity. (*Axos' RJN* [Doc. 12-1] 2:10–3:5.) Judicial notice of these documents is appropriate. These are matters of public record and Sterling does not dispute the facts contained therein.

//
//
//

IV. **DISCUSSION**

A. **Sterling failed to oppose Hamilton's motion.**

Hamilton contends the motion to dismiss should be granted because Sterling failed to oppose the motion. (*See Notice of Non-Opp'n* [Doc. 17] 2:16–17.) The Court agrees.

The Southern District of California Local Rules lay out the procedure for opposing a motion (or not opposing a motion): "each party opposing a motion … must file that opposition or statement of non-opposition with the Clerk and serve the movant or the movant's attorney not later than fourteen (14) *calendar* days prior to the noticed hearing." Civ L.R. 7.1.e.2 (emphasis in original). "The opposition must contain a brief and complete statement of all reasons in opposition to the position taken by the movant …." Id. 7.1.f.3.b. "If an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion …." Id. 7.1.f.3.c.

Hamilton was not served with an opposition. (*Notice of Non-Opp'n* at 2:12.) Additionally, although Sterling filed a document and identified it on the docket as an opposition to Defendant Hamilton's motion, the document is an exact copy of Sterling's opposition to Axos Financial's motion to dismiss. (*See Opp'n to Hamilton's MTD* [Doc. 15].) It fails to address or even identify any of Hamilton's arguments, which include significant differences from Axos Financial's arguments. While Axos Financial's motion primarily focuses on the RICO claims and jurisdictional issues (*see Axos' P&A* [Doc. 12]), Hamilton's motion addresses standing issues, as well as concerns of specificity in the pleadings with respect to Hamilton in the civil fraud and RICO claims (*see Hamilton's P&A* [Doc. 13]).[5] Sterling therefore also failed to provide any analysis or basis for opposing Hamilton's arguments. For these reasons, the Court finds Sterling's

---

[5] Although Hamilton raises standing, the cases it cites as support appear to stand for the proposition that Sterling does not have standing to assert breach of contract claims. It is unclear whether those cases also preclude Sterling from suing Hamilton for RICO on the basis of standing. Because the Court ultimately concludes that the FAC fails to state a RICO claim, it declines to decide the standing issue at this time.

6

failure to comply with Civil Local Rule 7.1.e.2 constitutes consent to granting Hamilton's motion.[6] See Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal.")

### B. Axos Financial failed to name the correct party.

Axos Financial contends that the FAC should be dismissed because the transactions at issue were between Sterling and Axos Bank, not Axos Financial. (*Axos' P&A* at 4:22–5:5.) In support of this argument, Axos Financial relies on the exhibits attached to its request for judicial notice, which confirm that Axos Financial, Inc., is an entirely separate and distinct entity from Axos Bank. (*Id.* 5:6–12; *see RJN*, Ex. A, Ex. B.)

Nowhere in the opposition does Sterling respond to Axos Financial's argument, nor does it dispute that the exhibits establish Axos Financial is a separate and distinct entity from Axos Bank. (*See Opp'n to Axos MTD* [Doc. 14] 15:19–16:11.) Nor does Sterling contend that Sterling Financial was even remotely involved in the events at issue in this case or has any relationship to this case. For these reasons, the Court will grant Axos Financial's motion to dismiss without leave to amend.

### C. The FAC's fails to state a RICO claim.

Because the sole basis for subject-matter jurisdiction is Sterling's RICO claim, the Court will also evaluate Defendants' arguments that the FAC fails to state a RICO violation.

To state a RICO claim, a plaintiff must allege facts demonstrating defendants participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3)

---

[6] Axos Financial also points out that Sterling filed the opposition to its motion four days late in violation of the Local Rules. The Court nevertheless reaches the merits of Axos Financials' arguments because the arguments establish leave to amend is not warranted as to Axos Financial.

7

through a pattern (4) of racketeering activity or collection of unlawful debt." Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014). "To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." Id. (citing Boyle v. United States, 556 U.S. 938, 946 (2009)). The fourth element of racketeering activity requires predicate acts, which in this case are alleged to be mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." Id. (citing Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1399 (9th Cir. 1986).

As explained below, Sterling's RICO allegations fail to remotely establish any of these elements.

### 1. Enterprise

"Section 1961(4) describes two categories of associations that come within the purview of the 'enterprise' definition. The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers 'any union or group of individuals associated in fact although not a legal entity.'" United States v. Turkette, 452 U.S. 576, 581-82 (1981) (citing 18 U.S.C. § 1961(4)).

Sterling appears to allege Axos Financial is part of an "associated-in-fact" enterprise.[7] An "association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Boyle v. U.S., 556 U.S.

---

[7] Although the FAC does not specify which enterprise theory Sterling is relying on, the Court reads the FAC in a light most favorable to Sterling, which warrants analyzing under an association-in-fact enterprise. Additionally, Sterling has signaled in the opposition that it is relying on an association-in-fact theory to prove enterprise. (*See Opp'n to Axos' MTD* at 8:26.)

8

938, 946 (2009). Such an enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 945.

### i. Common Purpose

Though Sterling argues that it has alleged the existence of a common purpose (*see Opp'n to Axos' P&A* 9:2), the FAC contains "no specific facts indicating that defendants acted with an objective unrelated to ordinary business or government aims." Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017). Once the conclusory allegations are stripped from the FAC, all that appears is an ordinary business dispute between Sterling and its lender relating to whether Sterling had sufficient hazard insurance on the Property and whether the lender's purchase of force-placed insurance was proper. (*See FAC* ¶¶ 21–24, 42, 44.) These allegations fail to suggest a common purpose even remotely. Gomez v. Guthy-Renker, LLC, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) ("RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client."). cf. Odom v. Microsoft Corp., 486 F.3d 541, 543 (9th Cir. 2007) (finding a RICO enterprise's common purpose was adequately plead where the complaint alleged specific facts describing the fraudulent means used to carry out the scheme). Sterling, therefore, failed to properly allege the common-purpose element.

### ii. Structure/Organization and Continuity.

Along with a common purpose, a plaintiff must sufficiently allege an "ongoing organization" to adequately plead an enterprise. Turkette, 452 U.S. at 583. "An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" Odom, 486 F.3d at 552. Moreover, a plaintiff must also sufficiently allege "that the various associates function as a continuing unit." Turkette, 452 U.S. at 583.

9

Here, the closest Sterling comes to attempting to allege an ongoing organization is the boilerplate allegation that "Defendant AXOS and Defendant HAMILTON have entered a non-competitive and exclusive business relationship/conspiracy whereby Plaintiff was forced into paying for force-placed insurance provided by Defendant HAMILTON, where the cost was far in excess of the value provided by comparative companies to profit both Defendants." (*FAC* ¶ 6.) This allegation is entirely conclusory. There are no facts remotely suggesting an "organization." Similarly, there are no facts suggesting continuity. This element is not sufficiently pled.

### 2. Conduct

The RICO statue states that a defendant must "conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs…." 18 U.S.C. § 1962(c). More than mere participation in the enterprise's affairs is required as RICO liability only applies to "those who participate in the operation or management of an enterprise through a pattern of racketeering activity." Reves v. Ernst & Young, 507 U.S. 170, 184 (1993). Thus, "one must have some part in directing [the enterprise's] affairs." Id. at 179. This means RICO liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise*'s affairs,' not just their *own* affairs." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) (citing Reves, 507 U.S. at 185) (emphasis in original).

Sterling has failed to allege any facts remotely suggesting Defendants did anything except participate in the conduct of their own business affairs. See In re Jamster Mktg. Litig., 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (finding RICO claims were not adequately plead because, after plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose"). Thus, Sterling has failed to adequately plead the conduct element.

### 3. **Racketeering**

To prove racketeering activity, a plaintiff must allege one of several predicate acts enumerated in 18 U.S.C. § 1961(1). In this case, Sterling has alleged mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." Eclectic Props. E., LLC, 751 F.3d at 997. Rule 9(b)'s heightened particularity pleading standard only applies to "the factual circumstances of the fraud itself" while "the state of mind … of the defendants may be alleged generally." Odom, 486 F.3d at 554. Thus, "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Schreiber Distrib. Co., 806 F.2d at 1401.

The FAC is devoid of allegations suggesting the formation of a scheme to defraud. There are no allegations satisfying the particularity requirement regarding when or how the mail or wires were used for any purported scheme. There is also nothing suggesting either Defendant had an intent to defraud. In short, the FAC fails each of the elements required to show racketeering activity predicated on mail and wire fraud. See Gustafson v. BAC Home Loans Servicing, LP, 2012 WL 7071469, at *6 (C.D. Cal. Dec. 20, 2012) (dismissing plaintiff's RICO claim when plaintiff's allegations lacked the requisite "specific content of the false representations or omissions and fail[ed] to connect any of the Defendants to the alleged predicate acts with anything more than a sweeping allegation that each Defendant committed the predicate act").

### 4. **Pattern**

A "'pattern of racketeering activity' requires at least two acts of racketeering activity …." 18 U.S.C. § 1961(5). Because Sterling has failed to adequately allege any

predicate acts to prove racketeering activity above, Sterling has also failed to plead this element.

### D. State Law Claims

Federal jurisdiction hinges on whether Sterling can plead a RICO claim.[8]  Given the numerous hurdles Sterling faces in repairing the RICO claim, the Court reserves judgment on the state law issues until it becomes clear this Court has subject-matter jurisdiction.

### E. Leave to Amend

Sterling requests leave to amend the FAC.  (*Opp'n* [Doc. 14] 15:20.)  However, for the reasons stated above, the allegations in the FAC do not come close to alleging a RICO claim.  This is particularly true with respect to Hamilton, which is rarely mentioned in the FAC.  Instead, the allegations strongly suggest this case involves a routine business dispute between Sterling and the lender related to the force-placed insurance.  Nor does Sterling's opposition identify any facts suggesting it can cure the deficiencies with the RICO claim.

Nevertheless, Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave when justice so requires."  Given this standard, the Court will grant Sterling one opportunity to amend the FAC to state a RICO claim.

---

[8] Although Sterling has served the wrong entity in Axos Financial, Inc., Sterling's FAC indicates that it intended to sue Axos Bank who "is headquartered" in San Diego.  (*FAC* ¶ 2.)  As Sterling is an LLC with members residing in New York City and San Francisco, complete diversity is not met.  (*Id.* ¶ 1.)  Moreover, the heavy prevalence of state law claims and early nature of the suit point against exercising supplemental jurisdiction.

## V.   CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS** Defendant Axos' request for judicial notice [Doc. 12-1] and motion to dismiss [Doc. 12] **WITHOUT LEAVE TO AMEND**. The Court **GRANTS** Defendant Hamilton's motion to dismiss [Doc. 13] **WITH LEAVE TO AMEND**. Sterling's second amended complaint is **due on or before April 20, 2022.**

IT IS SO ORDERED.

Dated: March 29, 2022

Hon. Thomas J. Whelan
United States District Judge